UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
NATIONAL LIFE INSURANCE COMPANY,

                              Plaintiff,                        **REPORT AND**
                                                               **RECOMMENDATION**
                                                        19 CV 4597 (NGG) (CLP)

               -against-

WEI DONG and RU CHEN,

                              Defendants.

------------------------------------------------------------ x

**POLLAK**, Chief United States Magistrate Judge:

      On August 9, 2019, plaintiff National Life Insurance Company ("plaintiff" or "National Life") commenced this Declaratory Judgment action against defendants Wei Dong ("Dong") and Ru Chen ("Chen") (collectively, "defendants"), seeking a declaration that a life insurance policy issued on the life of Dong (the "Policy") is void *ab initio*, or, in the alternative, a declaration that the Policy is void as against public policy due to the absence of proof of Dong's claimed death and defendants' conduct in faking his death and submitting a false claim for death benefits in violation of criminal and penal statutes. (Compl.).[1]  Plaintiff also seeks the termination of the Policy, a declaration that it is entitled to retain the premiums paid, as well as compensatory, consequential, and punitive damages, including attorney's fees and costs based on claims that defendants committed fraud, negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, and civil conspiracy.  (Id. ¶  6).

      Despite proper service, defendant Chen failed to file an answer or otherwise respond to the Complaint.[2]  Defendant Dong is allegedly in hiding and avoiding service.  Accordingly,

----

[1] Citations to "Compl." refer to plaintiff's Complaint filed on August 9, 2019, ECF No. 1.

[2] Defendant Chen was served by personal service on August 16, 2019.  (Clerk's Certificate of

plaintiff moved for entry of default and a default was entered against defendant Chen on

September 27, 2019 and against defendant Dong on February 20, 2020  On April 13, 2020,

plaintiff moved for default judgment against both defendants and on April 14, 2020, the

Honorable Nicholas G. Garaufis referred this matter for a Report and Recommendation.[3]


## FACTUAL BACKGROUND

Plaintiff National Life alleges that it is an insurance company in the business of

underwriting life insurance policies, organized and existing under the laws of the State of

Vermont, with its principal place of business located at One National Life Drive, Montpelier,

Vermont.  (Id. ¶ 1).  National Life is authorized to transact business in the State of New York.

(Id. ¶ 8).

Plaintiff alleges that on June 16, 2015, defendant Dong, as proposed insured and policy

owner, executed an Application for Life Insurance, seeking the issuance of a Flexible Premium

Indexed Universal Life Insurance Policy, containing a face amount death benefit of $400,000,

with an additional protection benefit rider of $100,000, for a total death benefit of $500,000.  (Id.

¶ 18).  At the time of his Application, Dong maintained his primary residence and domicile at

715 51st Street, Brooklyn, N.Y.  (Id. ¶ 13).  Defendant Chen, who was represented to be Dong's

wife and named as a beneficiary under the Policy, resides at 1552 Sadler Drive, North Liberty,

Iowa, and is a citizen of the State of Iowa.  (Id. ¶¶ 14, 20).  According to the Application, Dong

was a 44-year-old Chinese citizen, born on September 9, 1971, a permanent resident of the

---

Default of Defendant Ru Chen, ECF No. 10). Pursuant to an Order from this Court, defendant Dong was
served by publication.  (ECF No. 14).
    [3] The case was originally assigned to the Honorable James Orenstein, United States Magistrate
Judge.  Upon Judge Orenstein's retirement in November 2020, the case was reassigned to the
undersigned.

United States, and employed in a management position at Chen Garden, with an annual income of $50,000 and a net worth of $250,000.  (Id. ¶ 19).

National Life alleges that prior to submitting the Application, Dong and Chen and others devised a scheme to defraud National Life, whereby Dong  would apply for the issuance of the Policy and then disappear, faking his death so that Chen would provide false proof thereof to National Life and receive the death benefits owed under the Policy.  (Id. ¶ 17).  Unaware of the scheme, plaintiff issued the Policy, bearing No. NL2478480, with an effective date of August 10, 2015.  (Id. ¶ 21).

In or about July 2018, Dong ceased paying the monthly premiums owed on the Policy, and on or about August 20, 2018, an individual by the name of Kevin Chen began paying the premiums, which he continued to pay through November 2018.  (Id. ¶ 24).  Beginning in December 20, 2018, defendant Chen began paying the premiums.  (Id. ¶ 25).

According to defendant Chen, Dong traveled to the Dominican Republic on September 16, 2018 because he was unemployed and looking for a job.  (Id. ¶ 26).  Chen notified plaintiff that Dong died on January 18, 2019, "at night," at a private home located at "Av. Republica de Argentina #124, Santiago" as the result of a myocardial infarction.  (Id. ¶ 27).  National Life was informed of Dong's death by email on February 11, 2019, along with a request for a claim form. (Id. ¶ 28).

In response, plaintiff sent Chen written correspondence outlining the information that needed to be submitted to process the claim, including one original certified death certificate, Claimant's Statement to be signed by Chen, a Certification of Death of a U.S. Citizen or Non-Citizen National abroad, police reports, autopsy reports, hospital records, "Foreign Death Questionnaire," Consular Mortuary Certificate, transit documents for his body, a color copy of

his cancelled passport, a HIPAA authorization form, his flight itinerary, boarding pass and confirmation of travel plans.  (Id. ¶ 29 (1)-(12)).

On March 13, 2019, Chen submitted a signed Claimant's Statement seeking to have the death benefits paid to her, and representing that Dong had died on January 18, 2019 in the Dominican Republic of a myocardial infarction.  (Id. ¶ 30).  In signing the Claimant's Statement, Chen acknowledged reading the "IMPORTANT FRAUD WARNING NOTICE" on the Statement, which advised that any person who intentionally and knowingly provided materially false, misleading, or incomplete information in order to deceive the insurance company, "which is a crime," may be subject to the denial of benefits, and subject to fines and/or imprisonment. (Id. ¶ 32).  There was a specific warning as to the penalties for providing false information in New York.  (Id.)

On or about March 13, 2019, National Life received a Foreign Death Questionnaire signed by Chen in which she represented that Dong was unemployed, looking for business/work opportunities and traveled to the Dominican Republic on September 16, 2018 with the duration of the trip "undecided."  (Id. ¶ 34).  The Foreign Death Questionnaire, like the Claimant's Statement, contained an explicit fraud warning and an acknowledgment by the declarant that the statements were "to the best of my knowledge true and accurate."  (Id. ¶ 42).

In the Foreign Death Questionnaire, Chen represented that Dong "died at night" in a "private home" where his body was identified by an "unknown person."  (Id. ¶¶ 35, 36).  She further represented that an autopsy was performed but there was no post-mortem or inquest.  (Id. ¶ 36).  Chen further represented that it was "unknown" where and when the death was registered, and she further represented that Dong's body was buried at the El Ingenio Cemetery of this City of Santiago."  (Id. ¶¶ 37, 38).  She further stated that the contact information for the person who

planned the arrangements was unknown and she could not identify any two guests, not related to the insured, who were present at the funeral.  (Id. ¶ 38).

Attached to the Foreign Death Questionnaire were a "Certificate of the Director of Cemeteries, Augustin Garcia Hernandez, dated January 20, 2019, representing that Dong was buried on January 18, 2019 in Building No. 29, Niche No. 5 in the El Ingenio Cemetery, along with a Certification of the Medical Director of the National Institute of Forensic Sciences in Santiago, Dr. Fatima Frometa, dated February 7, 2019, providing an autopsy number and stating the cause of death.  (Id. ¶ 39).  Chen submitted a JetBlue Airways Bag Receipt from JFK in New York, dated September 16, 2018 which states: "NOT VALID FOR TRANSPORTATION" and "NOT VALID FOR TRAVEL."  (Id. ¶ 40).  According to plaintiff, Chen failed to provide any of the other requested information.  (Id. ¶ 41).

On March 13, 2019, National Life also received a letter signed by Mei Hui Chen, the agent who placed the Policy, which provided information that contradicted the information provided in the Claimant's Statement and Foreign Death Questionnaire. (Id. ¶ 43).  The agent stated that no autopsy was performed because Dong died of illness and there was no need for police involvement; and that Chen intended to bring Dong's ashes back to China.  (Id.)

Since Dong's death occurred in the Dominican Republic, National Life conducted an investigation to authenticate the documents and his death, engaging an investigation service who traveled to the Dominican Republic, where they interviewed witnesses, visited the cemetery and the address where Dong allegedly died. (Id. ¶¶ 44-46; see also Quick Cert.[4] ¶¶ 14-15).  The Director of Cemeteries provided National Life's investigator with a certificate which stated that, contrary to the January 20, 2019 Certificate provided by Chen, Dong was not buried in any of the

---

[4] Citations to "Quick Cert." refer to the Certification of Timothy Quick in Support of Plaintiff's Motion for Default Judgment, dated March 26, 2020 (ECF No. 19-2).

municipal cemeteries in Santiago.  (Compl. ¶¶ 46, 47; Quick Cert. ¶ 16).  The Chen Certificate is also false in that the name of the Manager in the Certificate provided by Chen is inaccurate, is on outdated letterhead from 2017, and purports to have been issued on a Sunday, the same day of his death, even though an autopsy was allegedly performed.  (Compl. ¶ 49; Quick Cert. ¶ 16).  The investigator viewed the claimed burial space and determined that the Niche contains the name of another person.  (Compl. ¶ 50; Quick Cert. ¶ 17).

Dr. Fatima Frometa was also interviewed by the National Life investigators and directly contradicted statements made in the Chen submissions, including stating that there was no autopsy performed, no registry of an autopsy and the number on the death certificate relates to someone else, not Dong.  (Compl. ¶¶ 51, 52; Quick Cert. ¶ 18).  Dr. Frometa informed the investigators that the signature on the Certification provided Chen was not her signature; bears the wrong motto of the year letterhead; and had several other irregularities.  (Compl. ¶ 53; Quick Cert. ¶ 19).  Finally, the National Life investigators determined that there is no residence or structure located at the address where Dong allegedly was residing and died.  (Id. ¶ 55; Quick Cert. ¶ 21).

National Life alleges that Dong, Chen, and others conspired to defraud National Life by fraudulently procuring the Policy, faking Dong's death, and submitting fraudulent claims for death benefits under the Policy.  (Id. ¶ 56).  National Life claims that it has been damaged and had to incur costs and fees in connection with the underwriting and servicing of the Policy, the investigation of the scheme, and the commencement of this action.  (Id. ¶ 57).  Hence, plaintiff seeks to retain the premiums paid for the Policy or the cash value of the Policy.  (Id. ¶ 58).  However, plaintiff further asserts that it stands ready, willing, and able to refund the premiums as

directed by the Court in accordance with plaintiff's demand to declare the Policy void *ab initio* or for termination of the Policy.  (Id. ¶ 59).

Plaintiff brings ten claims:  1) the First Count seeks a declaratory judgment that the Policy was void *ab initio* based on the fraudulent procurement of the Policy (id. ¶¶ 61-65); 2) the Second Count seeks a declaratory judgment that the Policy was void as an illegal contract (id. ¶¶ 66-68); 3) the Third Count seeks a declaratory judgment that the Policy is void as against public policy (id. ¶¶ 69-71); 4) the Fourth Count seeks a declaratory judgment that National Life does not need to pay benefits to Chen because there is no "proof of death" (id. ¶¶ 72-84); 5) the Fifth Count seeks a declaratory judgment that the Policy is void due to defendants' fraudulent conduct (id. ¶¶ 85-89); 6) the Sixth Count seeks damages for fraud (id. ¶¶ 90-96); 7) the Seventh Count seeks damages based on defendants' negligent misrepresentations (id. ¶¶ 97-104); 8) the Eighth Count alleges a breach of contract (id. ¶¶ 105-07); 9) the Ninth Count alleges a breach of the covenant of good faith and fair dealing (id. ¶¶ 108-112); and 10) the Tenth Count alleges a civil conspiracy. (Id. ¶¶  113-116).[5]  In filing for default, plaintiff seeks relief only for the First Count, including an Order declaring that the Policy is rescinded and null and void *ab initio* and an Order that plaintiff is entitled to retain the premiums as an offset against damages, costs, fees, and expenses.  (Compl. ¶¶ 65(a)- (b); Pl.'s Mem.[6] at 25).

---

[5] The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff has alleged complete jurisdiction between the parties.  (Compl. ¶¶ 11-15).  The amount in controversy is $500,000, the total death benefit under the Policy.  (Id. ¶ 18).  See PHL Variable Ins. Co. v. Bimbo, No. 17 CV 1290, 2018 WL 4691222 at *2 (E.D.N.Y. Aug. 30, 2018) (noting that if the substance of a declaratory judgment action seeks to determine the validity of an insurance policy, then the policy limit is the amount in controversy).

[6] Citations to "Pl.'s Mem." refer to the plaintiff's Memorandum in Support of Motion for Default Judgment, filed April 13, 2021. (ECF No. 19-1).

<u>DISCUSSION</u>

A. <u>Default Judgment</u>

    1. <u>Legal Standard</u>

       Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment.  See <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See <u>id.</u>; <u>see</u> also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b). The Clerk of the Court entered a default against defendants on June 9, 2020.  To date, defendants have not moved to vacate the default judgment.

       Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  See <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and doubts should be resolved in favor of the defaulting party.  <u>Id.</u>  Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default.  <u>See</u>

Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

2. Plaintiff's Fraud Claim

Plaintiff alleges that Dong and Chen entered into a conspiracy to defraud National Life through a scheme whereby they would procure the Policy insuring Dong's life, fake his death, and falsely claim the death benefits by submitting false proof of his death. (Pl.'s Mem. at 16-17).

In alleging a claim of fraud, the plaintiff must allege that there are facts demonstrating: 1) a material misrepresentation or omission of fact; 2) made with knowledge of its falsity; 3) reliance by plaintiff on the misrepresentations; 4) and damages caused by the misrepresentations. See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997); Allstate Ins. Co. v. Polack, No. 08 CV 0565, 2012 WL 4489282 (E.D.N.Y. Sept. 12, 2012), adopted by, 2012 WL 4490775 (E.D.N.Y. Sept. 28, 2012); see also Lama Holding Co. v. Smith Barney, 88 N.Y.2d 413, 646 N.Y.S. 2d 76 (1996) (defining the elements of fraud as a misrepresentation known by defendant to be false, made for the purpose of inducing plaintiff to act in reliance thereon, action in reliance and injury resulting therefrom). While "fraudulent intent. . .is rarely susceptible to direct proof," it can be established by inference drawn from the circumstances.  Setters v. AI Properties and Developments (USA) Corp., 139 A.D. 3d 492, N.Y.S. 3d 87 (1st Dept. 2016); see also In re Direct Access Partners, LLC, 602 B.R. 495, 544 (S.D.N.Y. 2019) (collecting cases).. Under New York law, a plaintiff alleging common law fraud can establish an inference of scienter when facts are alleged showing that 1) defendants had both motive and opportunity to commit fraud; or 2) there was "strong circumstantial evidence of conscious misbehavior or recklessness."  380544 Canada, Inc. v. Aspen Tech., Inc., 633 F. Supp. 2d 15, 29 (S.D.N.Y. 2009) (quoting Kalnit v. Eichler, 264 F.3d 131, 138-39 (2d Cir. 2001)).

Here, plaintiff has alleged that defendants engaged a conspiracy to defraud based on faking the insured's death and submitting false paperwork in an effort to induce plaintiff to pay death benefits under the life insurance policy procured from National Life.  (Pl.'s Mem. at 18; Compl. ¶ 92).  Plaintiff further alleges that defendants knowingly and intentionally misrepresented, failed to disclose and concealed their intention to defraud at the time they applied for the Policy.  (Id.; Compl. ¶ 91).  They then knowingly and intentionally

misrepresented that Dong had died, submitting a fake death claim and forged or fraudulent death certificate, autopsy report, and burial records. (Compl. ¶ 92). Specific language in the documents executed in connection with the Policy and the claim advised them that material misrepresentations would be relied on by National Life and would constitute fraud and a crime. (Id. ¶¶ 32, 42).

National Life further alleges that it reasonably relied on the representations made by Dong and Chen in issuing the Policy, which it would not have otherwise issued had the company been aware of the scheme. (Pl.'s Mem. at 19). As a result of this reliance, National Life alleges that it suffered damages in the form of brokerage commissions and other expenses, fees, and costs, including attorneys' fees and investigation expenses. (Id.)

Courts faced with similar facts have held that the insurer has stated a valid claim of fraud against the insureds and beneficiaries. See, e.g., Mincho v. Bankers' Life Ins. Co., 129 A.D. 332, 113 N.Y.S. 346 (1908); see also Soanes v. Blue Cross/Blue Shield, 970 F. Supp. 230 (S.D.N.Y. 1997). In Five Star Life Insurance Company v. Simpson, No. 15 CV 0483, 2015 WL 9582552 (M.D. Fla. Nov. 25, 2015), adopted by 2015 WL 9488952 (M.D. Fla. Dec. 30, 2015), the insured and the beneficiary were alleged to have entered into a similar scheme to fake the insured's death and induce payments to the beneficiary under the policy. In entering a default judgment, the court found that plaintiff had stated a claim of fraud against the insured and the beneficiary, and awarded damages and costs to the insurance company. Id. at * 4-5.

Given that defendants have defaulted and the allegations in plaintiff's Complaint have not been challenged, the Court accepts the allegations as true and respectfully recommends that the court find that plaintiff has stated facts sufficient to allege a claim of fraud against defendants.[7]

---

[7] Plaintiff has also alleged claims of breach of contract, negligent misrepresentation, and

B.  Legal Standard

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985).  When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability.  See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the

---

conspiracy in the Complaint.  Plaintiff's Complaint sufficiently sets forth facts, which, if true, establish plaintiff's claim for breach of contract.  It is well-established under New York law that a party alleging an action for breach of contract must prove the following:  "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."  First Inv'rs Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998) (quoting Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994)); see also Arch Specialty Ins. Co. v. Apco Industries, Inc., No. 18 CV 4041, 2020 WL 6581000, at *5 (E.D.N.Y. Oct. 5, 2020) (quoting Fernandez v. Abatayo, 172 A.D.3d 821, 822 (2d Dep't 2019).  Similarly, to the extent plaintiff seeks to assert a claim for negligent misrepresentation, it must allege that: 1) the parties had a special or privity-like relationship that imposed a duty on the defendant to impart correct information to the plaintiff; 2) the information was incorrect; and 3) plaintiff reasonably relied on that information.  Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014) (citing J.A.O. Acquisition Corp. v. Stavitsky, 8 N.Y.3d 144, 148, 863 N.E.2d 585, 587, 831 N.Y.S.2d 364, 366 (N.Y. 2007)).  The Complaint alleges that the parties entered into a contract for insurance, which defendants breached by faking Dong's death and seeking to recover benefits. Moreover, although the defendants were under a duty to impart correct information to plaintiff, they provided the plaintiff with false information in seeking the issuance of the Policy, as well as forged and fraudulent documents and misrepresentations to induce payment of benefits under the Policy, and plaintiff relied on their misrepresentations to its detriment. Based on these allegations, plaintiff has stated plausible claims for fraud, breach of contract, and negligent misrepresentation sufficient to warrant entry of default judgment against defendants Dong and Chen.

amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly

Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993)

(quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). Here, because the papers set forth

the relief sought in sufficient detail, and defendants have not responded to the Complaint or the

motion for default judgment, the Court finds that a hearing is unnecessary.

    1.  Declaratory Judgment Declaring Policy Void *Ab Initio*

       Plaintiff argues that when an insurance policy is obtained through a fraudulent scheme,

the policy is void *ab initio.* (Pl.'s Mem. at 12). Under the Restatement (First) of Restitution,

insurers are relieved of liability where the policy "is fraudulent in its inception." Restatement

189(1); see also 1A Appelman, Insurance Law & Practice § 382 (1965) (stating that when a life

insurance policy was "procured by the beneficiary with the predetermined intent to murder [the]

insured, it is wholly void at its inception for fraud. . . ."). This is because when a policy is issued

as part of a scheme to defraud the insurance company, "there never was in fact any valid contract

of insurance." Goldstein v. New York Life Ins. Co., 133 Misc. 106, 231 N.Y.S. 161 (N.Y. Cty

1928), aff'd, 234 N.Y.S. 250, 225 A.D. 642 (1st Dep't 1929); see also AEI Life LLC v. Lincoln

Benefit Life Co., 892 F.3d 126, 136, n.13 (2d Cir. 2018) (policies void *ab initio* never come into

existence).

       Thus, courts have voided policies where the policy was procured as part of a scheme to

fake the insured's death, Goldstein v. New York Life Ins. Co., 133 Misc. at 108; part of a scheme

to procure a policy and commit suicide, Smith v. National Benefit Society, 123 N.Y. 85, 25 N.E.

197 (1890); or simply part of a scheme to fraudulently procure the policy. John Hancock Life

Ins. Co. v. Perchikov, 553 F. Supp. 2d 229, 234-35 (E.D.N.Y. 2008); see also Estate of Grieco v.

Bankers Am. Life Assur. Co., 251 A.D. 2d 446, 674 N.Y.S. 2d 408 (2d Dep't 1998).

In <u>Goldstein</u>, the court held that the fraud consisted of the omission by the insured and the beneficiary to "inform the company that it was in reality ensuring a swindle rather than a life" and that their fraud "went to the very heart and essence of the policy, to such an extent that. . . there never was in fact any valid contract of insurance." <u>Goldstein v. New York Life Ins. Co.</u>, 133 Misc. at 108, 231 N.Y.S. at 163. On appeal, the First Department affirmed, noting that: "The fraud perpetrated by the assured and [beneficiary] in procuring the policies vitiated the contracts. They were void in their inception. They were never valid, enforceable contracts." 225 A.D. at 648, 234 N.Y.S. at 257. <u>See also</u> <u>Chen v. New York Life Ins. Co.</u>, 168 F.3d 498 (9th Cir. 1998); <u>New England v. Null</u>, 605 F.2d 421, 422 (8th Cir. 1987).

Based on the unchallenged allegations in plaintiff's Complaint which allege that defendants conceived of a plan to defraud National Life by applying for the Policy, with the intent that Dong would later disappear, and his death would be faked, the Court respectfully recommends that the court find that the Policy was void *ab initio.* As such the Policy is rescinded and the court should grant default judgment on plaintiff's first claim.

2. <u>Retention of Premiums</u>

Plaintiff seeks a declaration that National Life is entitled to retain the premiums collected on the Policy as an offset to the costs incurred and damages suffered as a result of this fraudulent scheme. (Pl.'s Mem. at 17).

As the court in <u>Soanes v. Empire Blue Cross/Blue Shield</u> held, "when an insurance company rescinds on grounds of fraud, it may, before returning premiums, offset losses incurred on the policy which was obtained by fraud." 970 F. Supp. at 245 (citing <u>Mincho v. Bankers' Life Ins. Co.</u>, 129 A.D. 332, 334, 113 N.Y.S. 346, 348 (1908)). "[T]he general rule requiring return of premiums in the event of rescission is inapplicable when the underlying policy was

14

procured by the actual fraud of the insured." PHL Variable Ins. Co. v. Lucille E. Morello 2007 Irrevocable Trust, 645 F.3d 965, 969 (8th Cir. 2011). Set offs to which an insurer may be entitled include commissions paid on the fraudulently procured policy, see Ashkenazi v. AXA Equitable Life Ins. Co., 2016 WL 5919853, *9 (N.Y. Sup. Oct. 5, 2016), aff'd, 155 A.D. 3d 583, 63 N.Y.S. 3d 853(1st Dep't 2017), and attorneys' fees incurred in the issuance of the policy. PHL Variable Ins. Co. v. The Sheldon Hathaway Family Ins. Trust, No. 10 CV 0067, 2013 WL 6230351 (D. Utah Dec. 2, 2013).

According to the Affidavit of plaintiff's counsel, Colleen M. Duffy, Esq., National Life paid significant commissions to Mei Hui Chen, the insurance agent who procured the Policy on behalf of the defendants. (Duffy Aff.[8] ¶ 20). In total, National Life paid Ms. Chen $6,229.05 in commissions, which National Life seeks to recoup from the premiums paid. (Pl.'s Mem. at 23).

In addition, National Life hired the firm of Tweedy Claims Investigators to investigate the request for benefits filed by defendant Chen. (Id.) Their services included efforts to authenticate Dong's death in the Dominican Republic, to verify the autopsy and burial records submitted by Chen, and to interview witnesses in the Dominican Republic. (Id.; see Quick Cert. ¶ 22). In total the out-of-pocket expenses paid to Tweedy Claims amounts to $4,202.25. (Id.)

Following receipt of the information developed by Tweedy Claims, plaintiff retained the firm of McElroy, Deutsch, Mulvaney & Carpenter, LLC (the "Firm") to file this action seeking to void the Policy. (Pl.'s Mem. at 24). According to plaintiff, it incurred $46,267.50 in legal fees through February 29, 2020, with additional fees continuing to be incurred. (Id., Ex. J).

Among the other costs and expenses incurred by National Life in bringing this suit are $400 in filing fees; $435 in service of process fees; $38.83 in database search fees to try to locate

[8] Citations to "Duffy Aff." refer to the Affidavit of Colleen Duffy, Esq., in Support of Plaintiff's Motion for Default Judgment, dated April 7, 2020 (ECF No. 19-3).

15

Dong for service purposes; $7,195.14 in fees for the posting of notices in the New York Post and Des Moines Register; photocopying fees of $260.45 and $33.30.  (Pl.'s Mem. at 24; Duffy Aff. ¶¶ 14-19, Exs. F-J).

According to National Life, the total amount paid in commissions, fees, expenses, and costs equal $65,061.52.  The total amount of premiums paid under the Policy was $48,449.74. Since principal and interest due on the Policy loan total $27,658.70, plaintiff asserts that there is a balance left of $20,791.04.  (Duffy Aff. ¶ 21; Quick Cert. ¶¶ 25, 26).  National Life seeks to retain this remainder – $20,791.04 – as an offset against the $65,061.52 in costs and expenses incurred in investigating this scheme and pursuing this action.  Having reviewed the Duffy Affidavit and exhibits thereto and the Quick Certification, the Court finds that the amounts incurred have been substantiated and the attorneys' fees incurred in pursuing this matter are reasonable.

Accordingly, it is respectfully recommended that plaintiff National Life be permitted to retain the premiums paid and use them to offset the commissions paid, the investigative fees, and litigation expenses incurred as a result of the defendants' fraudulent conduct.

CONCLUSION

Having reviewed the Complaint and the papers submitted by plaintiff in connection with its motion for default judgment, the Court respectfully recommends that: 1) plaintiff's motion for default judgment be granted; 2) that the Court enter a declaration that the Policy is void *ab initio* as a result of defendants' fraudulent scheme; 3) that plaintiff be permitted to rescind the Policy and retain the premiums paid as an offset to the fees, costs and expenses incurred in pursuing the investigation into this fraudulent scheme.

16

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiff's counsel is Ordered to serve a copy of this Report and Recommendation on defendants by mail to their last known addresses.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
     March 8, 2021

                      /s/ Cheryl L. Pollak
                      Cheryl L. Pollak
                      Chief United States Magistrate Judge
                      Eastern District of New York